**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT T. C.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:23-cv-01776-SAB<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 14, 18) |

**I.**

**INTRODUCTION**

Plaintiff Scott T. C. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") failed to develop the

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1  record and failed to adequately consider the nature and intensity of Plaintiff's alleged physical
2  symptoms.

3      For the reasons explained herein, the Court will affirm the decision of the Commissioner.

## II.

## BACKGROUND

### A. Procedural History

On February 16, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (ECF No. 11, Administrative Record ("AR"), 26.) Plaintiff's application was initially denied on July 8, 2021, and denied upon reconsideration on September 28, 2021. (AR 26.) Plaintiff requested before a hearing before an ALJ. On August 10, 2022, Plaintiff, represented by counsel, appeared for a telephonic hearing in front of an ALJ where Plaintiff and vocation expert ("VE") Luis Mas testified. (Id.) On November 23, 2022, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 36.) On October 23, 2023, the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

### B. The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2024, and that Plaintiff had not engaged in substantial gainful activity since March 15, 2020, the alleged onset date. (AR. 29.) The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; thoracic vertebral wedge fracture, and sacroiliitis. (Id.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 30.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except Plaintiff could frequently climb ramps and stairs, but can only occasionally stoop, kneel, crouch, crawl and climb ladders, ropes, or scaffolds. (AR 31.)

The ALJ then found that that Plaintiff was unable to perform any past relevant work, he was 47 on the alleged onset date, and he had at least a high school education. (AR 34.) The ALJ

discussed that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as framework supported a finding that Plaintiff was "not disabled," whether or not Plaintiff had transferrable job skills. (AR 34-35.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 35.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from March 15, 2020, through the date of the decision, November 23, 2022. (AR 36.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.) Thereafter, the parties filed their briefs on the matter.[2]

### III.
### LEGAL STANDARD

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v.

---

[2] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited

Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[4] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

---

herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024) (quoting Ford, 950 F.3d at 1154). In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023) (quoting Lambert v.

1  Saul, 980 F.3d 1266, 1278 (9th Cir. 2020)).  The burden of showing that an error is not harmless
2  "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d
3  1104, 1111 (9th Cir. 2012) (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

4  Finally, "a reviewing court must consider the entire record as a whole and may not affirm
5  simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,
6  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
7  Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the
8  Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d
9  625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  It is
10 not this Court's function to second guess the ALJ's conclusions and substitute the Court's
11 judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational
12 interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting
13 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

16  Plaintiff argues that the ALJ erred in two ways.  First, Plaintiff argues that the ALJ failed to
17 develop the record in relation to Plaintiff's mental and physical impairments when calculating the
18 RFC. (ECF No. 14, pp. 8-14.)  Second, Plaintiff contends that the ALJ erred by failing to give
19 clear and convincing reasons why the ALJ rejected Plaintiff's subjective complaints.  (Id. at pp.
20 14-17.)   The Commissioner opposes, arguing that substantial evidence supports the ALJ's
21 decision. (ECF No. 18.)  The Court agrees with the Commissioner.

### A.  The ALJ Did Not Fail to Develop the Record

23  Beginning with mental health, Plaintiff argues that the record lacks an opinion from any
24 medical source that reviewed "the majority" of Plaintiff's mental health treatment records and
25 mental status abnormalities. (ECF No. 14, p. 9.)  In particular, Plaintiff posits that the state-agency
26 reviewing physicians did not review a complete record and did not have access to evidence of
27 Plaintiff's mental health treatment.  (Id.)  Thus, Plaintiff argues that the ALJ erred because the ALJ
28 rendered her own medical opinion when calculating Plaintiff's RFC rather than weighing medical

opinions. (Id. at pp. 10-12.) Regarding physical impairments, Plaintiff argues that the ALJ erred by relying on non-examining sources who reviewed Plaintiff's records only through May 2021 and ignored later records demonstrating worsening of symptoms. (Id. at pp. 13-14.) The Commissioner first responds that Plaintiff's failure to develop the record argument was not preserved below for this Court's review. (ECF No. 18, p. 5.) In any event, the Commissioner argues that the record was neither ambiguous nor inadequate and therefore the ALJ had no duty to develop the record. (Id. at p. 6.) Regarding physical impairments, the Commissioner argues that Plaintiff is seeking to have this Court reweigh the evidence, which would be inappropriate. (Id. at p. 7.) The Commissioner is mistaken on preservation, but the Court otherwise agrees with the Commissioner.

"The claimant has the burden of proving that she is disabled." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. [The ALJ] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Id. (quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)). Further, the ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his own interests. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Higbee, 975 F.2d at 562).

The Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted). Similarly, the regulations provide the ALJ may order further consultative examination to "resolve

1 an inconsistency in the evidence or when the evidence as a whole is insufficient to support a
2 determination or decision." See 20 C.F.R. § 416.919a. Examples of situations under which further
3 developing the record may be required include when the additional evidence needed is not
4 contained in the records of the claimant's medical sources, and when highly technical or
5 specialized medical evidence not available from the claimant's medical sources is needed. 20
6 C.F.R. § 416.919a(b). Once the duty to further develop the record is triggered, failure to do so
7 constitutes reversible error. See Tonapetyan, 242 F.3d at 1150-51.

Beginning with preservation, the Court finds that Plaintiff did not forfeit his failure to develop the record argument because "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen, 80 F.3d at 1288. The Commissioner's offered precedent on this issue is inapposite and has been previously rejected by this Court. Vasquez v. Comm'r of Soc. Sec., No. 1:18-cv-01042-EPG, 2019 WL 3714565, at *2-*3 (E.D. Cal. Aug. 7, 2019) (citing Smolen, 80 F.3d at 1288). Therefore, the Court will move onto the merits.

    a. Plaintiff's Mental RFC

Plaintiff argues that the record lacks an opinion from a medical source that reviewed the majority of Plaintiff's mental health treatment records and mental status abnormalities. (ECF No. 14, p. 9-10.) Specifically, Plaintiff notes that the state-agency reviewing physicians did not review a complete record. (Id.) Plaintiff contends that this demonstrates the ALJ's failure to develop the record. (Id.) The Commissioner responds that Plaintiff's arguments are conclusory and do not support that the ALJ's duty to develop was triggered. (ECF No. 18, pp. 5-6.) In reality, Plaintiff has brought the Court a nesting doll, seeking to attack the ALJ's opinion by imbedding sub-arguments. In any event, the Court finds these arguments to be without merit.

The Court begins by clarifying 20 C.F.R. § 404.1519a, which Plaintiffs quotes extensively. That regulation provides that an ALJ "may" purchase a consultative examination of a claimant where "there is an indication of a change in [a claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established." Id. In other words, 20 C.F.R. § 404.1519a provides for a discretionary determination

1 by an ALJ—where the current severity of a claimant's impairments has not been established—to
2 purchase a consultative examination. However, by its own terms, the purpose of 20 C.F.R.
3 § 404.1519a is to inform a claimant of a noncomprehensive list of reasons why an ALJ might order
4 a consultative examination where the record is ambiguous or incomplete. While informative to the
5 context of when an ALJ might purchase a consultative examination, this regulation provides little
6 force to Plaintiff's position.

7 Before addressing whether the ALJ's duty to develop the record was triggered here, the
8 Court must first discuss Plaintiff's implicit assertion that in every social security administrative
9 proceeding there must be an opinion from a medical source that reviews "the majority" of a
10 claimant's mental health treatment records. Tellingly, Plaintiff cites to no authority for this
11 proposition. While it is apparent that comprehensive consultative examinations of records would
12 be helpful to ALJs, the Court has not found any statute, regulation, or caselaw that establishes that
13 at least one physician must conduct a metanalysis of the "the majority" of a claimant's mental
14 health treatment records. The Court observes that even with such an opinion, there still might be
15 instances where a record is inadequate or ambiguous. Therefore, the Court finds this assertion to
16 be unsupported and ultimately unhelpful to Plaintiff's arguments.

17 As stated above, an ALJ's duty to develop the record is triggered only when there is
18 ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper
19 evaluation of the evidence. Tonapetyan, 242 F.3d at 1150. The Court finds that Plaintiff's
20 argument regarding the need for an opinion that reviewed the majority of Plaintiff's mental health
21 record does not demonstrate that the ALJ's duty to develop the record was triggered in this case.
22 Furthermore, the remainder of Plaintiff's argument does not center on whether the record was
23 inadequate or ambiguous. Therefore, the Court finds that Plaintiff has not demonstrated that the
24 ALJ's duty to develop the record was triggered regarding Plaintiff's mental health records as it
25 relates to the RFC determination.

26 Instead, Plaintiff raises two other arguments regarding the ALJ's RFC determination. First,
27 Plaintiff argues that the ALJ offered her own medical opinion. (ECF No. 14, pp. 10-12.) Second,
28 Plaintiff asserts that the ALJ failed to acknowledge or weigh Plaintiff's abnormal mental status

1  findings. (Id. at 12-13.) The Court finds that the ALJ did not err.

2  Plaintiff first takes issue with the ALJ's determination that Plaintiff had only a mild
3  limitation in interacting with others. (AR. 30.) Plaintiff homes in on the ALJ's observation that
4  "[Plaintiff] had a good rapport with providers, was described as pleasant and cooperative, and had
5  good interactions with staff." (Id.) Plaintiff then cites to a district court opinion, Tina R. v.
6  Commissioner of Soc. Sec., for the proposition that interactions that claimants have with treatment
7  providers "do not demonstrate an ability to work with coworkers, supervisors, or the general public
8  in a work setting." No. C18-1041JLR, 2019 WL 1417301, at *5 (W.D. Wash. Mar. 29, 2019).
9  However, the Court finds that Tina R. overstated the relevant regulation. In its entirety, the
10 regulation states: "Your ability to complete tasks in settings that are highly structured, or that are
11 less demanding or more supportive than typical work settings does not necessarily demonstrate
12 your ability to complete tasks in the context of regular employment during a normal workday or
13 work week." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added). Therefore, the Court does
14 not find Tina R. to be persuasive for the proposition that an ALJ can never look to interactions
15 between a claimant and a health care provider in assessing a claimant's interaction with others.
16 Therefore, the ALJ did not err by considering Plaintiff's interactions with his health care providers.

17 Additionally, the records the ALJ cited to support her conclusion that Plaintiff had only a
18 mild limitation in interacting with others also include mention that Plaintiff has familial support
19 and was able to maintain a relationship with a girlfriend for at least seven months, including living
20 with her. (AR 30, citing, e.g., AR 532, 695.) Despite this, Plaintiff argues that the ALJ did not
21 cite to other relevant therapy records. The Court is not persuaded. Plaintiff cites to a
22 psychotherapy record from July 8, 2021, where Jeremy Argo, LCSW, noted that Plaintiff was
23 making progress, stating he had moved out of an ex-girlfriend's home and moved in with a friend
24 "that he hopes he can establish a romantic relationship with and feels less emotionally distressed."
25 (AR 719.) Further, Plaintiff identified this person as a "close friend" that is supportive, even
26 allowing Plaintiff's daughter to stay with them. (AR 720.) While the note discussed the estranged
27 relationship between Plaintiff and his son, the focus of the therapy session was on repairing that
28 relationship, including Plaintiff stating that he will "reach out to his son to rectify their current

1  issues in their communication." (Id.)  Plaintiff then cites to another psychotherapy record from
2  August 19, 2021, where Plaintiff discussed a fight he had with his fiancée regarding past
3  relationships.  (AR 747-748.)  Argo described Plaintiff as open, engaging, and responsive to the
4  therapy session, and Plaintiff agreed to set boundaries in a respectful manner to avoid triggering
5  jealousy and insecurity.  (AR 748.)  Plaintiff also highlights another psychotherapy record from
6  September 2, 2021, where Plaintiff reported making some progress; the note was otherwise similar
7  to the August 19, 2021 visit regarding dealing with jealousy and insecurity in relationships.  (AR
8  762-63.)  The Court finds that these records, if anything, support the ALJ's determination that
9  Plaintiff had only a mild limitation in interacting with others.  Plaintiff discussed his past
10 relationship, his current relationship, his relationship with his daughter, and his desire to rectify his
11 relationship with his son.

12      Next, Plaintiff states that the ALJ failed to consider "mental status findings" that would
13 impact Plaintiff's ability to sustain appropriate social behavior in the workplace, which the Court
14 construes to mean relating to interacting with others.  Plaintiff goes so far as to suggest that the
15 ALJ "cherry-picked" isolated portions of the record, purposely ignoring evidence favorable to
16 Plaintiff. (ECF No. 14, pp. 12, 13.)  The records cited by Plaintiff, which span from 2020 to 2022,
17 essentially state only Plaintiff's diagnoses of depression and bipolar affective disorder, mixed,
18 unspecified.  (AR 515, 517, 526, 527, 539, 540-41, 558-59, 566, 592-93, 604-06, 688-89, 705, 715,
19 754, 769, 782-84, 806-08.)  These citations do not otherwise speak to Plaintiff's interaction with
20 others.  Thus, it appears that Plaintiff is attempting to align diagnoses of depression and bipolar
21 affective disorder, mixed, unspecified with a lack of appropriate social behavior.  Ironically, the
22 Court finds that had the ALJ done so, the ALJ would have rendered an impermissible medical
23 opinion.

24      Moreover, Plaintiff states that the ALJ did not acknowledge any of these findings, which is
25 patently untrue.  The ALJ cited extensively to Exhibit 5F, which encompasses the administrative
26 record from pages 479-643, and Exhibit 12F which encompasses the administrative record from
27 pages 679-844.  (AR 30.)  In one instance, the ALJ cited to AR 514 and Plaintiff cites to AR 515
28 as a "record" the ALJ ignored.  These pages are within the same treatment record.  Another record

1 Plaintiff cites to was actually also cited by the ALJ. (AR 592.) That Plaintiff asserts that the ALJ
2 ignored records, with citations like these, strains credulity. See Vincent ex rel. Vincent v. Heckler,
3 739 F.2d 1393, 1394-95 (9th Cir. 1984) (The ALJ "need not discuss all evidence presented.")
4 (emphasis in original).

5       For the same reasons above, Plaintiff argues, in conclusory fashion, that the ALJ also erred
6 in her determination that Plaintiff had a mild limitation in concentrating, persisting, or maintaining
7 pace, despite the ALJ's observation that Plaintiff's mental status exams generally found him to be
8 within normal limits for attention and concentration. (ECF No. 14, p. 11.) The Court finds that
9 Plaintiff has not identified any records that rebut the ALJ's determination or otherwise supported
10 this argument, and the Court will not do so on its own.

11       Thus, the Court concludes that the duty to develop the record was not triggered, and the
12 ALJ provided substantial evidence in her determination that Plaintiff had only mild limitations in
13 interacting with others and concentrating, persisting, and maintaining pace. The ALJ, therefore,
14 did not err.

15       b.  Plaintiff's Physical RFC

16       Plaintiff asserts that in calculating the physical aspects of Plaintiff's RFC, the ALJ relied
17 upon opinions from non-examining sources who reviewed records through only May 2021. (ECF
18 No. 14, p. 13.) Plaintiff argues that subsequent treatment records documented "consistent
19 complaints of worsening neck and back pain with radicular symptoms, and escalating treatment to
20 include repeated trigger point and epidural steroid injections," which undercuts the ALJ's
21 determination. (Id.) The Commissioner respond that Plaintiff seeks to have the Court reweigh the
22 evidence, which is not a basis for reversal. (ECF No. 18, p. 17.) The Court agrees with the
23 Commissioner.

24       Plaintiff argues that records submitted after the state-agency physicians rendered their
25 opinions "included a persistent pain level of 8/10 with radicular symptoms that failed to resolve
26 with conservative treatment." (ECF No. 14, p. 13, citing AR 876-79.) Plaintiff asserts that two
27 medical providers "consistently observed" pain associated with cervical and thoracic spine range
28 of motion, palpable thoracic trigger points, muscle tenderness, and positive impingement tests and

1 decreased sensation. (Id. at p.14, citing AR 876-77.) While Plaintiff recognizes that state-agency physicians acknowledged Plaintiff was treated with trigger point injection, Plaintiff argues that these physicians did not have access to these subsequent records. (Id.) Plaintiff then states that the ALJ "did not acknowledge this evidence." (Id.)

As with Plaintiff's mental RFC argument, the Court reiterates that there is no requirement that a physician review "the majority" of Plaintiff's physical medical record. In turn, that there was no such opinion did not trigger the ALJ's duty to develop the record here.

Plaintiff's other arguments are unavailing. In support of the argument that the ALJ failed to review medical evidence submitted after the state-agency physicians finished their review, Plaintiff has directed the Court two records. One record, from August 31, 2021, notes that Plaintiff had reported increased low back pain, as well as pain in his neck. (AR 871.) This fails to persuade for two reasons. First, the record also stated that "[Plaintiff] reports moderate relief from current medications and is moderately able to carry out activity of daily living." (Id.) Thus, this directly supports the ALJ's observation that "[Plaintiff] would report some moderate improvement of his symptoms" (AR 33), which also undercuts Plaintiff's unremarkable observation that medical providers "consistently observed" certain pain reported by Plaintiff. Second, the ALJ cited to the following page Plaintiff identified, which is within the same record that also discussed Plaintiff's pain and the "multidisciplinary approach to achieve a better outcome" discussed by Wendell Wharton, PA-C. (AR 33, citing AR 872.)

The other record Plaintiff directs the Court to is from June 22, 2021. In that record, also from Wharton, Plaintiff reported a pain level of 8 out of 10. (AR 876.) This record too noted that Plaintiff reported low back and neck pain. (AR 877.) And, just as the August 2021 record documented, "[Plaintiff] reports moderate relief from current medications and is moderately able to carry out activity of daily living." (Id.) Thus, this record as well supports the ALJ's determination. (AR 33.) Further, this time the ALJ cited to the exact page Plaintiff cites to as evidence the ALJ did not acknowledge. (AR 33, citing AR 879.) Thus, Plaintiff's assertions that the ALJ did not acknowledge this evidence is overblown.

The ALJ's determination of the RFC as it relates to physical impairments is supported by

substantial evidence. The ALJ did not err.

### B. The ALJ Properly Considered Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective complaints regarding his symptoms. (ECF No. 14, p. 15.) Plaintiff assets that the ALJ did not sufficiently explain how Plaintiff's prior work experience was inconsistent with his alleged symptoms. (Id. at p. 16.) Finally, Plaintiff suggests that the ALJ here merely provided a summary of the evidence without adequately giving clear and convincing reasons for rejecting Plaintiff's specific allegations. (Id.) The Commissioner responds that the ALJ adequately discounted Plaintiff's subjective systems. The Court agrees with the Commissioner.

As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277 (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015)). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Id. (quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277. Without sufficient reasoning from an ALJ regarding the rejection of a claimant's testimony, judicial review becomes impossible, and therefore, this is reversable error. See id.

In the decision, the ALJ identified the following allegations from Plaintiff regarding his symptoms. The ALJ identified Plaintiff's specific allegations "that that due to his neck and back injuries, he is no longer able to bend down, kneel, lift the weight required of his prior vocation, sit for prolonged periods and, on some days, is unable to even stand up. Additionally, [Plaintiff] states that he has difficulty following written instructions and handling stress, due to his mental health condition." (AR 31, citing AR 225-232.) The ALJ then noted Plaintiff's testimony at the

administrative hearing where Plaintiff stated that "he left his last place of employment due to his back issues." (AR 31, citing AR 60.) The ALJ observed that "[Plaintiff] estimated that he can sit for approximately twenty minutes at a time; and stand for approximately the same before needing to sit down." (AR 32, citing AR 56.) Finally, the ALJ noted that Plaintiff testified that "while . . . he can manage his personal care independently, he did indicate that it takes him much longer to do so since his injuries." (AR 32, citing AR 58.)

In rejecting that Plaintiff's alleged symptoms concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record, the ALJ first conducted a brief summary of the medical evidence before addressing Plaintiff's specific testimony. (AR 32-33.) The ALJ then first discounted Plaintiff's testimony regarding gait, strength, and alleged neurological defects. (AR 33.) Records the ALJ cited for this include an urgent care progress note from December 2021, where a doctor noted that Plaintiff had "no neurological defects." (AR 33, citing AR 676.) During that same visit, another provider conducted a brain scan using "automatic exposure control," which revealed an unremarkable scan leading to an impression of "[n]o acute intracranial abnormality." (AR 33, citing 678.) The ALJ also cited to Central California Pain Management records ranging from June 2021 to August 2022, where in June 2021 Wendell Wharton, PA-C, noted that Plaintiff appeared to have a normal gait and 5/5 motor strength in all aspects. (AR 33, citing AR 882.) These findings remained unchanged throughout the course of treatment. (AR 33, citing, AR 855, 859, 865, 870, 876.) The ALJ then cited to two disability determination explanation records that revealed normal mental statuses (AR 75, 90, 94); Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds (AR 77, 95-96); Plaintiff could stand, walk, or sit for 6 hours out of an 8-hour workday (AR 77, 95-96); and Plaintiff's gait and strength were within normal limits. (AR 79, 98.)

The ALJ also addressed Plaintiff's hearing testimony as contradicting Plaintiff's alleged symptoms. The ALJ observed that Plaintiff testified that in 2020, his last year of employment, he worked as a part-time truck driver for towing in "law calls" as well as towing for AAA and private insurance. (AR 33, citing AR 52.) Plaintiff testified that this job included lifting a 40-pound tool.

15

(AR 33, citing AR 53.) The ALJ cited the testimony regarding Plaintiff's 2020 employment as "demonstrate[ing] greater physical and mental abilities than [Plaintiff] alleges." (AR 33.) Finally, the ALJ observed that subsequent medical evidence did not demonstrate the worsening of symptoms following Plaintiff's final employment. (Id.)[5]

Based on the foregoing, the Court finds that the ALJ adequately identified Plaintiff's testimony, where the testimony was discounted, and the records that supported this determination.[6] The Court agrees with the Commissioner that it appears that Plaintiff is seeking to have the Court reweigh evidence or consider evidence in a way the ALJ did not. That, of course, is not the purpose of judicial review of an administrative decision by the Commissioner of Social Security. Thomas, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record, [courts] may not engage in second-guessing.").

In sum, the Court concludes that ALJ did not err.

## V.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Scott T. C. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **January 17, 2025**

_____
STANLEY A. BOONE
United States Magistrate Judge

---

[5] Plaintiff does not argue how the ALJ otherwise did not purportedly comply with SSR 16-3p. (ECF No. 14, p. 15.) The Court addresses only the arguments raised by Plaintiff. See Lewis, 236 F.3d at 517 n.13.

[6] While the Commissioner makes additional arguments about how the record supports the ALJ's determination (ECF No. 18, pp. 8-10), the Court is "constrained" to reviewing the reasoning of the ALJ. See Lambert, 980 F. 3d at 1278.

16